MICHIGAN EDUCATION ASSOCIATION v NORTH DEARBORN
HEIGHTS SCHOOL DISTRICT

Docket No. 97363. Submitted January 13, 1988, at Detroit. Decided
June 6, 1988. Leave to appeal applied for.

On May 7, 1985, the Crestwood School District annexed the adjoining North Dearborn Heights School District. Prior to annexation the teachers in the North Dearborn Heights District had a collective bargaining agreement with the district negotiated by the Michigan Education Association and the Crestwood teachers had an agreement negotiated by the Crestwood Teachers Organization. On April 5, 1985, the MEA filed an unfair labor practice charge against the North Dearborn Heights District claiming coercive dealings with MEA members and conspiracy to repudiate the collective bargaining agreement. After annexation, the MEA amended its complaint to charge both districts with repudiating the collective bargaining agreement. A hearing officer dismissed the charges. On appeal, the Employment Relations Commission held that 1) Crestwood was not properly served, 2) Crestwood was not required to honor the agreement, 3) the North Dearborn Heights District did not coerce MEA members and neither district violated the public employment relations act, and 4) Crestwood was not the alter ego of or successor to the annexed North Dearborn Heights School District. Michigan Education Association appealed.

The Court of Appeals *held:*

1. Crestwood received timely notice of the suit by the MEA and is not alleged to have been prejudiced. The fact that the notice did not technically comply with the rules of the Employment Relations Commission is not alone sufficient to warrant Crestwood's dismissal.

2. None of North Dearborn Heights School District's communications with its teachers was coercive or in the nature of

REFERENCES

Am Jur 2d, Corporations § 45.
Am Jur 2d, Labor and Labor Relations §§ 660 *et seq.,* 1956.
See the Index to Annotations under Corporations; Labor and Labor Relations.

bargaining but were to impart information. The Employment Relations Commission's findings of fact with regard to North Dearborn Heights School District's actions were supported by sufficient evidence on the record and its conclusions were not contrary to law.

3. Crestwood is not obligated to honor the contract either under the School Code or as a successor or alter ego of North Dearborn Heights.

Affirmed in part and reversed in part.

1. PROCESS — SERVICE OF PROCESS — IMPROPER SERVICE — COURT RULES.

An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided for service (MCR 2.105[J][3]).

2. LABOR RELATIONS — COMMUNICATIONS — CONSTITUTIONAL LAW.

An employer has a constitutional right to communicate with employees in a noncoercive manner so long as he does not engage in individual bargaining on mandatory subjects.

3. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — FINDINGS OF FACT — APPEAL.

Findings of fact of the Employment Relations Commission shall be conclusive if supported by competent, material and substantial evidence on the record considered as a whole (MCL 423.216[e]; MSA 17.455[16][e]).

4. SCHOOLS — ANNEXATION — SCHOOL CODE — COLLECTIVE BARGAINING AGREEMENTS.

Where an entire school district is annexed by another district, the annexing district is not bound by the collective bargaining agreements of the district annexed (MCL 380.901-380.933; MSA 15.4901-15.4933).

5. LABOR RELATIONS — SUCCESSOR EMPLOYERS — COLLECTIVE BARGAINING AGREEMENTS.

A new employer has an obligation to bargain with the old employer's union so long as the new employer is in fact a successor of the old employer and the majority of its employees were employed by its predecessor.

6. LABOR RELATIONS — ALTER EGO.

An alter ego is bound by prior collective bargaining agreements; the determination of whether one business entity is the alter ego of another requires consideration of whether the two enterprises have substantially identical management, business purposes, operation, equipment, customers, supervision and ownership.

*Hiller, Hoekenga & Ambers, P.C.* (by *Daniel J. Hoekenga* and *Dirk F. Zuschlag*), for the Michigan Education Association.

*Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C.* (by *Terrence J. Miglio, Gary P. King,* and *Robert A. Lusk*), for respondent school districts.

Before: J. H. GILLIS, P.J., and WEAVER and G. S. ALLEN,* JJ.

G. S. ALLEN, J. In this unfair labor practices action we are asked to decide whether, following annexation pursuant to MCL 380.901; MSA 15.4901, an annexing school district is required to honor the preexisting collective bargaining agreement of the district which is annexed. The issue is of first impression. Both the hearing officer and the Michigan Employment Relations Commission answered that question in the negative. The charging party appeals as of right. We affirm.

Crestwood School District (CSD) and North Dearborn Heights School District (NDH) are fourth-class Michigan school districts. On May 7, 1985, pursuant to MCL 380.901; MSA 15.4901, NDH was annexed by and became part of CSD following approval of the annexation by the voters of NDH. Prior to the annexation each district was a distinct and separate entity sharing a common geographic boundary. Each district had its own school board, hired its own employees, and maintained its own physical facilities. Prior to annexation NDH employed forty-nine teachers who were represented

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

by the Michigan Education Association. CSD employed approximately 104 teachers who were represented by the Crestwood Teachers Organization. After annexation all NDH assets and liabilities were turned over to CSD and forty-two of the forty-nine NDH teachers became teachers in the new CSD.

For a number of years prior to the successful annexation the matter of a merger or annexation of the two districts had been a lively topic. On March 7, 1983, a proposed annexation of NDH by CSD was rejected by the voters of NDH despite the public support of the NDH Board of Education. However, following that election two successive efforts to maintain the existing millage rates were defeated by the NDH electorate. As a result, in October, 1984, the NDH Board of Education authorized David Taylor, its superintendent, to arrange a joint meeting with the CSD Board of Education to discuss annexation. On November 19, 1984, the first of approximately ten joint meetings took place. At that meeting Robert Rutila, Superintendent of CSD, stated that CSD would not favor annexation if 1984 PA 154 was in effect. That act amended the School Code of 1976 by adding eight sections all relating to annexation *and transfer* of a school district. MCL 380.941-380.949; MSA 15.4941-15.4949. Section 948(2) expressly stated that the annexed district's collective bargaining agreement would remain in effect until "a successor agreement has been ratified by the bargaining agent of each bargaining unit and the boards of education of the annexing school district . . . ."

Concurrently, NDH continued its negotiations with the Michigan Education Association for a new collective bargaining agreement. Agreement was reached and a new contract was entered into effective December 21, 1984, to run until August

31, 1986. On January 24, 1985, Attorney General Frank Kelley ruled that 1984 PA 154 did not apply to the proposed annexation. Based upon that opinion CSD proceeded to support annexation and on January 28, 1985, both boards adopted resolutions calling for the annexation of NDH by CSD. Each resolution stated that Crestwood sought annexation only if 1984 PA 154 was not applicable. The annexation was approved by the Crestwood district electorate and became effective May 7, 1985. Additionally, both boards conditioned annexation upon passage of an amendment to § 902(a) of the School Code which would allow teachers of the annexed district to retain their seniority as acquired in the annexed district but with layoffs and recalls to be made under procedures and standards of the annexing district. Legislation for that purpose was introduced in HB 4362 which upon enactment by the Legislature became 1985 PA 11, immediately effective April 24, 1985. MCL 380.902a; MSA 15.4902(1).

On April 5, 1985, even before the election was held, the MEA filed an unfair labor practice charge against NDH claiming it was unlawfully and coercively dealing with MEA members and was conspiring to repudiate the valid collective bargaining agreement between the MEA and NDH. On May 17, 1985, by amended complaint, the MEA charged both NDH and CSD with unlawfully repudiating the MEA-NDH agreement. Following hearings before a hearing officer in June, 1985, an opinion and order was issued on August 30, 1985, dismissing all charges.

Both sides appealed to the Michigan Employment Relations Commission. CSD disputed the hearing officer's holding that it was properly before the commission even though it had not been properly served pursuant to the commission's

rules. On December 5, 1986, MERC issued its decision and order holding that: (1) all charges against CSD should be dismissed because CSD was not served in accordance with MERC rules; (2) CSD was not required to honor the December 21, 1984, collective bargaining agreement between the MEA and NDH; (3) NDH did not coerce or threaten MEA members nor did CSD or NDH bypass MEA during and after annexation negotiations in violation of § 10(1)(A) of the public employment relations act (PERA), MCL 423.210(1)(A); MSA 17.455(10)(1)(A); (4) CSD had not unlawfully repudiated the December 21, 1984, collective bargaining agreement in violation of PERA or § 901 of the Michigan School Code, MCL 380.901; MSA 15.4901; and (5) CSD was not the alter ego of or successor to the annexed NDH.

From MERC's decision and order the charging party, MEA, appealed as of right raising three issues: (I) Whether MERC erred in concluding that all charges against CSD should be dismissed because CSD was not served in accordance with MERC rules; (II) Whether MERC erred in concluding that NDH did not coerce or threaten MEA members and neither NDH nor CSD bypassed MEA during and after annexation negotiations in violation of PERA § 10(1)(A); and (III) Whether MERC erred in determining that CSD was not required to honor the December 21, 1984, collective bargaining agreement between MEA and CSD. In supplemental briefs filed in July, 1987, two tangential issues were raised: (IV) Does the introduction of HB 429 establish that CSD is not required to honor the December 21, 1984, collective bargaining agreement; and (V) Does the United States Supreme Court's decision in *Fall River Dyeing & Finishing Corp v NLRB,* 482 US —; 107 S Ct 2225; 96 L Ed 2d 22 (1987), support MERC's decision regarding Issue II.

## I

The charging party, MEA, concedes that defendant CSD was not served with the unfair labor practices charge in accordance with Rule 71 of MERC. No member of the Crestwood board was either personally served or served by registered mail. Nevertheless, Crestwood's attorneys, who also represent NDH, were formally served and a copy of the amended charges was mailed to both respondents. Further, both respondents appeared and defended at the hearing on the charges. No prejudice to CSD is shown or alleged because of the technically deficient service. This Court has held that, in accordance with MCR 2.105(J)(3), where notice of a pending suit is actually received within the requisite time frame, it matters not whether service of process was made in accordance with the prescribed rules. *Hill v Frawley,* 155 Mich App 611, 613; 400 NW2d 328 (1986); *Bunner v Blow-Rite Insulation Co, Inc,* 162 Mich App 669; 413 NW2d 474 (1987). Accordingly, MERC's decision on this issue is reversed. We next address the issues raised on their merits.

## II

The charging party, MEA, contends that NDH directly and coercively dealt with MEA members, thus undermining the MEA's position in violation of § 10(1)(a) of PERA, and that MERC's conclusion to the contrary is erroneous. Defendant NDH argues that none of the statements to MEA members were coercive and that an employer has a right to communicate with employees provided it is done, as in the instant case, in a noncoercive manner and no individual negotiations take place.

While it is true that in January, 1985, Superin-

tendent Taylor met with all NDH employees and informed them of the steps taken by the joint board meetings which commenced November 19, 1984, and described the plan of annexation and informed all persons present that, if annexation did occur, the existing collective bargaining agreement would not be honored, it does not follow that Taylor's activities "circumvented and undermined the MEA" or otherwise violated PERA § 10(1)(a), which prohibits employers from interfering with the exercise of employee rights granted under § 9. An employer has a constitutional right to communicate with employees in a noncoercive manner as long as he does not engage in individual bargaining on mandatory subjects. *In re Bangor Twp Bd of Ed,* 1984 MERC Lab Op 274, 387-388; *NLRB v Gissel Packing Co,* 395 US 575, 617-618; 89 S Ct 1918; 23 L Ed 2d 547 (1969). Review of the record indicates that all of the communications were in the nature of a progress report on what each district was doing about annexation. In essence, the communications merely conveyed information of an impending annexation and what effect it would have on the future working conditions. In no respect was it bargaining.

MERC's meticulously detailed opinion contains findings of fact and conclusions of law that neither the conduct of the superintendents of either school district or of the districts were in violation of PERA § 10(1)(a). A substantial portion of appellant's brief reargues disputed issues of fact. Findings of fact of the commission, "if supported by competent, material and substantial evidence on the record considered as a whole shall be conclusive." Section 16(a), PERA, MCL 423.216(e); MSA 17.455(16)(e). Strict deference must be given to an administrative agency's findings of fact. *MERC v Kleen-O-Rama,* 60 Mich App 61; 230 NW2d 308 (1975). Appellate

review should not invade the province of administrative fact finding "by displacing an agency's choice between two reasonably differing views." *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974).

The MEA, however, argues that, even if MERC's findings of fact are accepted, its conclusions of law as applied to these facts are in error. In support of this claim the MEA relies, inter alia, on *In re Birmingham Bd of Ed,* 1985 MERC Lab Op 755. In that case the Birmingham board bypassed the union and offered substantial early retirement benefits to union members. However, in that case the board was bargaining. In the instant case, NDH was simply telling its employees what to expect if annexation occurred. Likewise, *City of Pontiac,* 1975 MERC Lab Op 861, 867, is cited in support of the claim that § 10(10)(a) is violated when an employer directly notifies union members of its *intention* to alter working conditions. To the contrary, in that opinion the proposed change in working conditions *had* taken place. Thus, charging party's claim herein that it was an unfair labor practice for NDH to announce prior to annexation that CSD (not NDH) intended to repudiate the contract is not supported by case law. In summary, we find that MERC's decision that PERA § 10(1)(a) was not violated is supported by competent evidence and is not contrary to law.

### III

Was CSD required to honor the MEA-NDH collective bargaining agreement following annexation? This is the dominant issue raised on appeal. It is also an issue of first impression. MEA argues that CSD must honor the contract for any of three reasons: (A) under the School Code and Michigan

case law teacher contracts of the annexed district become the liability of the annexing school district; (B) CSD is the "remedial successor" of NDH and, as such, must honor earlier contracts of the former employer; and (C) CSD is NDH's "alter ego."

### A. SCHOOL CODE OF 1976

Section 948(2) of the Michigan School Code, added by 1984 PA 154, immediately effective June 25, 1984, provided that under certain conditions all employment contracts in effect at the time of an annexation-transfer election shall remain in effect until a new agreement is approved by the annexing district board. MCL 380.948(2); MSA 15.4948(2). Concerned that this section of 1984 PA 154 might apply to them, respondents asked the Attorney General for an opinion. As noted, from the very outset CSD did not want to undertake annexation if it meant that CSD would have to honor the MEA-NDH bargaining agreement. On January 25, 1985, the Attorney General issued an opinion stating that § 948 did not apply to the proposed annexation since that section was limited to annexations where part of one district is annexed to another and the remainder is transferred to still another district. The Attorney General ruled that the annexation of one school district to another continued to be governed by § 901 which permits annexation if a majority of the school electors in the district to be annexed approve the annexation and the board of the annexing district adopts a resolution approving the annexation. In so ruling, the Attorney General did not state one way or another whether annexations under § 901 required the annexing district to honor the collective bargaining agreement of the district annexed.

MEA argues that respondents fatally erred in

concluding that, just because § 948 did not apply to the proposed annexation, § 901(3) would not. That section provides in relevant part:

Property and money belonging to the annexed school district shall be the property of the annexing school district. *Outstanding indebtedness of the annexed school district shall become the liability of the annexing school district.* [MCL 380.901(3); MSA 15.4901(3).]

According to the MEA, the collective bargaining agreement is an "outstanding indebtedness" which under § 901(3) becomes the liability of the annexing school district. MEA buttresses this conclusion by reference to two Michigan Supreme Court decisions. In *Wilson v School Dist No 4, Ellington Twp,* 233 Mich 581; 207 NW2d 810 (1926), plaintiff was a teacher in defendant school district. When the schoolhouse burned defendant district merged with District No. 6 which refused to honor plaintiff's contract. Quoting from an old Michigan case, *Halbert v School Dist of Watertown Twp,* 36 Mich 421 (1887), our Supreme Court held: "Where one district is made up of two entire districts, it is clear enough that it must succeed to their rights and liabilities." 233 Mich 583. In *Stoel v Charlevoix Twp Unit School Dist No 1,* 351 Mich 152; 88 NW2d 273 (1958), two school districts were consolidated by an election. The consolidation called for defendant district to become liable for the debts and obligations of Marion Center District. Defendant refused to honor the contract between plaintiff and Marion Center on the grounds that plaintiff did not possess a legal teaching certificate. The Court held that defendant must honor the contract, stating:

[I]f there had not been [a] consolidation of

school districts, not only would this contract have been honored by the school district who drew it and not only would said contract be recognized as legal and binding, but the authorities . . . would have been complemented for the action which was taken under the emergency as it then existed.

Respondents contend that in enacting PERA the Legislature purposely distinguished collective bargaining contracts from individual teacher contracts and that the explicit provision in § 948 of the School Code for the survival of collective bargaining agreements in the limited situation where part of a district is annexed and the remainder is transferred to a third district, indicates that the Legislature expressly intended that collective bargaining agreements did not have to be honored under § 901, where, as in the instant case, the entire school district is annexed to another district. Further, respondents argue that § 901(3) of the School Code does not refer to collective bargaining agreements, but assuming, arguendo, that it does, where a conflict exists between the School Code and PERA, the latter prevails. On that issue MERC ruled in favor of respondents:

We agree with Respondent and the Administrative Law Judge that in enacting Section 901 of the School Code the legislature did not intend to determine the obligation of an annexing district to adhere to collective bargaining agreements negotiated by the annexed district. Collective bargaining agreements, unlike other contractual obligations including individual teacher contracts, are subject to the specific statutory regulation of PERA. Under this statutory scheme, the contractual obligations and rights of parties to a collective bargaining agreement are intertwined with statutory rights and obligations. Specifically, the obligation of an employer to honor a collective bargaining agree-

ment depends on this existence of a bargaining obligation created and maintained by PERA. As Respondents point out, in Section 948 of the School Code and elsewhere in the public acts the legislature has recognized the differences between collective bargaining contracts and other forms of public obligations. It has legislated explicitly to protect collective bargaining rights where it intended them preserved. We are not persuaded that in requiring the annexing district to assume the "outstanding indebtedness" of an annexed district, the legislature intended to require the annexing district to assume the annexed district's collective bargaining agreements even where the annexed districts [sic] collective bargaining units have not remained intact after the annexation.

Sections 901-932 of the School Code pertain to annexation of an entire school district. Those sections were enacted by 1976 PA 451. Collectively they make up "Part 10, Annexation" of the School Code. In 1984 PA 154, a set of new sections was added to the code. These concerned situations where part of a school district was annexed and a remaining part was transferred to another district. Collectively, the new sections are designated "Part 10A, Annexation and Transfer" of the School Code. In Part 10A annexations, the Legislature expressly provided that the collective bargaining agreement of the district annexed must be honored. In Part 10 annexations the statute is silent as to whether collective bargaining agreements must be honored. Does the silence of the Legislature in Part 10 signal that, unlike Part 10A, an annexing district is not bound by the collective bargaining agreement of the district annexed? That is the key issue raised herein.

Although the issue is close, we answer that question in the affirmative. We do so on the basis of legislative intent expressed in two bills concern-

ing the NDH-CSD annexation. As noted earlier, both boards conditioned their support of the proposed annexation upon enactment of an amendment to § 902(a) of the School Code. Legislation for that purpose was introduced early in 1985 in HB 4362 and upon passage April 11, 1985, became enrolled Public Act 11 of 1985. The House Legislative Analysis Section (Second Analysis) contains the following relevant information:

*THE CONTENT OF THE BILL:*

The bill would amend the School Code to provide that when one school district annexes another, the teachers of both districts would be merged for purposes of determining layoffs and recalls. Teachers of the annexed district would retain their seniority as acquired in the annexed district, and layoffs and recalls would be made according to the standards and procedures of the annexing district. A teacher on the layoff list of either district could not displace an actively employed teacher from either district at the time of annexation. Teachers on layoff lists from both districts would be merged in the same manner as those actively employed.

\* \* \*

*ARGUMENTS:*

*For:*

The bill would provide for dual seniority of teachers in the North Dearborn Heights and Crestwood school districts in the event of an annexation. Passage of the bill would help promote a clear understanding of the seniority issue before voters go to the polls to decide the annexation issue. It has been the policy of the legislature and the Department of Education to encourage the reorganization of school districts for the purpose of allowing greater educational opportunity while reducing costs to the state and local communities. In the particular case of North Dearborn Heights and Crestwood, many residents of the area argue that the community cannot continue to support

the relatively large number of school districts (six)
serving approximately 60,000 people. This fact is
illustrated by the expiration of North Dearborn
Heights' operating millage and several failed at-
tempts to renew it. Several times in the past
decade the legislature has passed legislation to
assist local communities in their efforts toward
school reorganization.

*Against:*

The bill has been proposed as a means of pro-
tecting the seniority rights of teachers, while in
fact the bill is supported by both boards of educa-
tion and opposed by both teacher organizations.
Some people believe the bill is a ploy to have the
legislature nullify the existing contracts of the
teachers when such decisions should rightfully be
made locally with input from all involved parties
through the collective bargaining process. *In fact,
Public Act 154 contains provisions for just such a
process, but through what some contend was a
drafting error, that legislation applies only to
school reorganizations in which a district is di-
vided and its territory is transferred to two or
more districts. The Crestwood/North Dearborn
Heights annexation has been proposed under the
"old" school annexation provisions of the School
Code, which are silent on the issue of employee
rights.* The issue of employee rights in school
reorganizations should be addressed in comprehen-
sive legislation which would apply to all school
districts. The process for an orderly transition of
employee contracts end bargaining units estab-
lished in Public Act 154 of 1984 would be a sensi-
ble approach to apply to all school reorganizations.
[Emphasis supplied.]

The emphasized portion of the above analysis
clearly states that the instant statute was designed
to do that which the Legislature intended to do in
1984 PA 154. To us, this demonstrates that the
Legislature itself felt that, in the absence of cor-
rective legislation, annexation under Part 10 did

not require the annexing district to honor existing contracts in the annexed district. In other words, just as express language was needed that all em-ployment contracts and agreements with autho-rized bargaining agents in effect at the time of annexation "shall remain in full force and effect for the duration of those contracts" in annexation-transfer (Part 10A) situations, so too it was needed in "old" (Part 10) school annexations. Had the Legislature believed, as the charging party asserts, that the silence of the Legislature in Part 10 situations requires the honoring of the transferred district's collective bargaining agreement, no legis-lation need have been introduced.

Again, in HB 4429, introduced March 31, 1987, it clearly appears that, without amendatory lan-guage similar to that found in § 948, collective bargaining agreements made pursuant to § 901 need not be honored by the annexing district. HB 4429 would add § 902(b) to the School Code to provide in relevant part:

> (1) Beginning October 1, 1985, except as provided in subsection (2), for employees of an annexing and an annexed school district *all employment con-tracts and agreements with authorized bargaining agents in effect at the time of an annexation election shall remain in full force and effect for the employees covered by them until bargaining representatives of the employees have been certi-fied by the Michigan employment relations com-mission and a successor agreement has been rati-fied by the bargaining agent of each bargaining unit and the board of the annexing school district.* [Emphasis supplied.]

The legislative analysis accompanying HB 4429 deflates MEA's claim that under the School Code, as it read on the date of annexation—May 7, 1985,

Crestwood was required to honor MEA's collective bargaining agreement with NDH.

> Under the bill, employees of an annexed school district employed by an annexing district would be entitled to all the rights and benefits they otherwise would have been entitled to if they originally had been employed by the annexing district, including tenure status.
>
> (*Similar language to that found in this bill is already in the School Code in a section applying to school reorganizations in which a district is divided and its territory transferred to two or more other districts.* The code's provisions for other annexations apply only to annexations taking place up to June 30, 1986 in a county with a population of more than two million. The bill would change that date to September 30, 1985 and delete the population requirement. Those provisions require that teachers from both districts be merged for purposes of determining layoffs and recalls, and that teachers of the annexed district retain their seniority. A teacher on the layoff list of either district could not displace an actively employed teacher from either district. New collective bargaining contracts could alter those arrangements after the annexation had been in effect for two years.) [Emphasis supplied.]

We particularly note that the language used in HB 4429 is virtually verbatim the language used in § 948. If the Legislature truly believed that without any amendment § 902 as it read on May 7, 1985, required the annexed district's collective bargaining agreements to be continued in effect, the Legislature would not have employed the introductory language "Beginning October 1, 1985." The obvious reason for that language was to preserve the integrity of the paragraph as it stood prior to the time NDH was successfully annexed, viz.—that prior to October 1, 1985, collective bar-

gaining agreements of the unit to be annexed were not binding on the annexing district. In reaching our interpretation of the statute, we are fully aware of the argument that in some instances an amendment to a statute merely clarifies what the legislative intent had been prior to amendment. *Production Credit Ass'n of Lansing v Dep't of Treasury*, 404 Mich 301, 319; 273 NW2d 10 (1978); *Ziehm v State Farm Mutual Automobile Ins Co*, 88 Mich App 576, 583; 278 NW2d 678 (1979). The charging party so argues in the instant case.

We reject that claim on two grounds. First, in *Ziehm*, the House Bill analysis stated that the proposed bill would only clarify legislative intent. In the instant case, the bill analysis not just once, but on two separate occasions pertaining to two separate bills, expressly stated that the purpose of the statute was to do in the amendatory language that which was done in 1984 PA 154. Second, by using the language "prior to October 1, 1985" the Legislature clearly indicated it intended one result in pre-October 1, 1985, annexations and a different result in post-October 1, 1985, annexations.

Reasons of public policy also support MERC's decision. As recited earlier, the existing contract between the MEA and NDH became the focal point in the decision to annex. From the outset, CSD publicly stated that assumption of the NDH-MEA collective bargaining agreement would be too costly and would involve the complications of administering two different bargaining agreements. Prior to the election, both districts adopted a comprehensive annexation plan which pointedly stated that all NDH employees would be "governed by the respective bargaining unit contracts in place or to be negotiated with Crestwood Board of Education." Both boards specifically conditioned

annexation upon passage of the amendment to § 902(a) of the School Code, discussed *supra.* Indeed, the entire campaign and the public information disseminated thereon was premised on the belief that annexation under Part 10 of the School Code would not require Crestwood to honor MEA's contract with NDH. Knowing all of these facts the State Board of Education approved the proposed annexation on March 7, 1985;[1] § 902(a) was amended as requested and, on May 7, the people of North Dearborn Heights approved the annexation by a vote of 1,736 to 745.

In the absence of specific statutory provision that collective bargaining agreements of an annexed district must be honored by the annexing district, this Court declines to unilaterally reverse a decision of the voters of the district annexed. We decline to accomplish by judicial fiat that which the Legislature, as yet, has declined to do. If collective bargaining agreements of the district annexed under Part 10 of the School Code must be honored, that decision should be made by the Legislature, not by the judiciary.[2]

---

[1] Under § 901(1) of the School Code, the State Board of Education is required to approve a proposed annexation. MCL 380.901(1); MSA 15.4901(1).

[2] House Bill 4429, introduced March 31, 1987, would amend § 902a of the School Code to provide that, after October 1, 1985, when one school district annexes another, all bargaining agreements for employees of both districts at the time of the annexation election would remain in full force and effect until a successor agreement was ratified by the bargaining units and by the school board of the annexing district. Csd argues that this amendment clearly indicates that when Crestwood annexed NDH on May 7, 1985, it had no obligation to honor NDH's collective bargaining agreement. The MEA argues that, while as a general rule an amendment is to be construed as changing the statute amended, the rule is not applied in reverse to presume that the statute must have been something different than that which was the clear intent of the Legislature after amendment. *Detroit Edison Co v Janosz,* 350 Mich 606, 613-614; 87 NW2d 126 (1957). However, no action has been taken on the bill, which remains in committee.

### B. SUCCESSORSHIP PRINCIPLES

Relying on *John Wiley & Sons Inc v Livingston,* 376 US 543; 84 S Ct 909; 11 L Ed 2d 898 (1964), and *NLRB v Burns Security Services,* 406 US 272; 92 S Ct 1571; 32 L Ed 2d 61 (1972), the MEA contends that labor law doctrines of successorship require CSD to honor the MEA-NDH bargaining agreement. However, the *Burns* Court took pains to narrow its holding in *Wiley* by stating that in *Wiley* it had held that a successor could be forced to arbitrate the *issue* of what portion of a prior collective bargaining agreement the successor was obligated to honor. This is far different than the MEA's claim that *John Wiley* holds a successor corporation bound to honor the prior employer's collective bargaining agreement.

More significantly, in finding the successorship relationship, the *Burns* Court relied on the fact that twenty-seven of the forty-two security guards hired by Burns had previously been employed by the predecessor company. Likewise, the predecessor's union was the bargaining unit for Burns' company. In the instant case only a minority of the employees of the new Crestwood district were former employees of NDH and the bargaining units are light years apart.

Recently, in *Fall River Dyeing & Finishing Corp v NLRB,* 482 US —, —, n 12; 107 S Ct 2225; 96 L Ed 2d 22 (1987), the United States Supreme Court, after stating that in *Burns* it "was unclear if [the duty to bargain] would turn on whether a majority of the successor's employees were those of the predecessor or whether the successor had hired a majority of the predecessor's employees," concluded that the new employer has an obligation to bargain with the old employer's union so long as the new employer is in fact a successor of the old

employer and the majority of its employees were employed by its predecessor. *Fall River* reaffirmed the *Burns* two-step successorship test: (1) is the new employer the old employer's successor in fact; and (2) were a majority of the successor's employees employed by the predecessor employer. Only if both requirements are met may successorship liability be imposed.

In the instant case neither step of the test has been established. The new Crestwood School District is much larger, has a different policy making board, has an additional student body, physical plant and operates a different curriculum than the former NDH. Also, former NDH employees did not constitute the majority of CSD employees.

### C. ALTER EGO

A collective bargaining agreement binds the "alter ego" of the employer. *Southport Petroleum Co v NLRB,* 315 US 100; 62 S Ct 452; 86 L Ed 718 (1941). In *West Ottawa Ed Ass'n v West Ottawa Public Schools Bd of Ed,* 126 Mich App 306; 337 NW2d 533 (1983), this Court adopted the standard set forth in *Crawford Door Sales Co,* 226 NLRB 1144; 94 LRRM 1393 (1974), for determining whether one public employer is the successor or "alter ego" of another employer under PERA.

> In deciding whether an entity is an alter ego, the factors considered are whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership. . . . The focus of this test is on any continuing disguised attempt to avoid the obligations of a collective-bargaining agreement through a sham transaction or technical change in operations. . . .
> . . . Although a bona fide successor generally

is not bound by prior bargaining agreements, an alter ego will be, since it is, in reality, a disguised continuance of the old entity. . . . Since both the consortium and the West Ottawa School District existed simultaneously for several years, the alter ego test is inappropriate to evaluate the association's claims. [126 Mich App 319. Citations omitted.]

The MEA contends that the undisputed facts show that the "new" Crestwood is NDH's alter ego, that the new district was jointly planned by the former two separate boards, that the joint boards planned what curriculum would be used, how the combined district would be financed, the placement and benefits to be awarded teachers, and even hired David Taylor, former NDH superintendent, as an assistant superintendent of the new district. We disagree. After the date of annexation the NDH board ceased to exercise any control over the operations, personnel, and equipment of the former NDH district. After May 7, 1985, budgeting, labor relations, grievances, purchasing and personnel decisions, which prior to annexation had been handled by Taylor, were handled by Robert Rutilla and Crestwood staff members who, prior to annexation, had no connection with NDH. Furthermore, policy decisions of the new district were made by a new board. As the MEA itself admits in its brief on appeal, the postannexation CSD is "materially different from either of its predecessors." This being so, under the *Crawford* test "alter ego" status is not established. The essence of an "alter ego" finding is substantially identical management, customers, supervision and ownership. In the instant case, the record discloses substantial changes in management, supervision and ownership.

Further, a central element to finding an "alter

ego" relationship is a sham or disguised attempt to avoid a collective bargaining agreement. In the instant case, the record clearly establishes that long before NDH and the MEA entered into its collective bargaining agreement in late December, 1984, the issue of annexation of NDH and CSD had been raised and twice rejected. Thus, it is difficult to conclude that the proposed annexation was something new or a sham to avoid the December, 1984, bargaining agreement.

Finally, most case law supporting an "alter ego" relationship involves situations where one private company is acquired by another private company. Seldom is an "alter ego" relationship found where, as here, one public employer is annexed to another public employer. In *West Ottawa Ed Ass'n, supra,* our Court concluded that, where both public units existed simultaneously for several years, the alter ego test is inappropriate to evaluate the charging party's claims. Thus, as a matter of law, the "alter ego" relationship does not exist in the instant case.

Having found that, except for Issue I, MERC did not err on any of the issues raised by charging party, the decision of MERC is reversed as to Issue I and affirmed on all other parts.

No costs, a question of public importance being involved.