*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

SHARON D. JONES,

        Plaintiff-Appellant,

v

KREIS ENDERLE HUDGINS & BORSOS, PC,
and MICHAEL J. TOTH,

        Defendants-Appellees.

UNPUBLISHED
December 22, 2020

No. 348378
Wayne Circuit Court
LC No. 18-011649-NM

Before: CAVANAGH, P.J., and JANSEN and SHAPIRO, JJ.

PER CURIAM.

The trial court granted defendants summary disposition of plaintiff's complaint that included claims for legal malpractice, breach of contract, and intentional tort. On appeal, plaintiff argues that the trial court erred by finding that the two-year limitations period barred her legal malpractice claim, and that the two-year limitations period applicable to malpractice actions does not apply to the other claims alleged in her complaint. We affirm the trial court's dismissal of plaintiff's legal malpractice claim, but reverse the dismissal of her breach-of-contract claim and remand for further proceedings with respect to the non-malpractice claims against defendants.

## I. BACKGROUND

In October 2015, plaintiff retained defendants to represent her in a divorce action in Barry County. Plaintiff contends that she specifically requested that defendants file a motion to change venue from Barry County. The engagement agreement with defendants provides that defendants were retained to represent plaintiff "with respect to a <u>divorce/Motion to Dismiss</u> matter." (Bolding removed). Defendants filed an appearance and an answer to the complaint for divorce, but no motion for change of venue was ever filed. Following a bench trial in the divorce case in June 2016, a hearing was scheduled for September 7, 2016, for entry of the judgment of divorce. Before that hearing, a stipulated order signed by plaintiff allowing defendants to withdraw as counsel for plaintiff was received by the 56B district court on September 2, and then received by the Family Division of Barry County Trial Court and filed with the Barry County Clerk on September 7,

2016.[1] The order was signed by the court on either September 6 or September 8, 2016. Plaintiff, a licensed attorney, represented herself at the hearing on September 7.

Two years later, on September 7, 2018, plaintiff submitted for filing a complaint against defendants in the Wayne Circuit Court via the court's electronic filing system. That same day, she filed an affidavit and order for waiver of fees and costs. On Monday, September 10, the court sent plaintiff an e-mail message rejecting her complaint for failing to include a case code and a statement indicating if there were any other prior Wayne County cases, and asking her to resubmit the complaint to address the deficiencies.[2] On September 11, 2018, plaintiff successfully submitted her complaint and a summons was issued. On November 28, 2018, plaintiff filed an amended complaint, alleging that she had hired defendants to

> (1) bring a motion or other appropriate action to dismiss the divorce action from Barry County, (2) secure child support, (3) procure all available medical evidence regarding the ROPA[3] demand, make an adequate factual record with respect to the ROPA demand and to challenge the ROPA demand, (4) request the appointment of a guardian ad litem to protect the interests of the youngest child born during the marriage, (5) safeguard the privacy of Plaintiffs medical information and records consistent with State and federal HIPAA laws, and (6) subpoena Barry County Friend of Court to trial to testify, and to impeach Jeremy Jones on testimony he had given to FOC that contradicted material facts he had sworn to the court.

Plaintiff further alleged that defendants "promised to do each of the acts listed in the above paragraph." After a detailed listing of defendant's breaches of duty and other misconduct relating to the alleged promises, plaintiff set forth claims for legal malpractice, intentional infliction of emotional distress, fraudulent misrepresentation, exemplary damages, breach of contract, breach of fiduciary duty, and civil conspiracy.

In lieu of answering the complaint, on December 19, 2018, defendants filed a motion for summary disposition under MCR 2.116(C)(7) (statute of limitations) and (C)(3) (insufficient service of process). Defendants acknowledged their representation of plaintiff in the divorce action and asserted that plaintiff did not file her complaint for legal malpractice until September 11, 2018, more than two years after the order of withdrawal was signed in the divorce action, which defendants claimed occurred on September 6, 2016. Therefore, defendants argued, plaintiff's complaint was time-barred because it was filed beyond the applicable two-year limitations period

---

[1] The parties offer no explanation for the district court's receipt of this stipulation and order. We note that the 56B District Court and the Barry County Trial Court, Family Division, are both located at 206 West Court Street, in Hastings, Michigan. The district court is located in Suite 202, while the family division is located in Suite 302.

[2] Plaintiff's initial complaint did not comply with MCR 1.109(D)(1)(b)(iii) (requiring the appropriate case code) and MCR 1.109(D)(2)(a) (requiring declaration of any other pending civil actions arising from the transaction alleged in the complaint).

[3] Revocation of Paternity Act, MCL 722.1431 et seq.

for legal malpractice. In addition, defendants asserted that plaintiff failed to effectuate valid service on defendants.

Responding to defendants' motion, plaintiff asserted that the stipulated order of withdrawal was entered on September 7, 2016, rather than September 6. Plaintiff further argued that a pleading is considered "filed" when it is delivered to the court, even if it is rejected for noncompliance with court rules, and that her malpractice claim was timely because it was filed on September 7, 2018, within two years of entry of the order of withdrawal in the divorce action. Plaintiff also argued that the two-year limitations period for legal malpractice did not apply to her claims alleging breach of contract and intentional misconduct.

The trial court ruled that plaintiff's action was governed by the two-year limitations period applicable to legal malpractice claims and her complaint was filed beyond the two-year period because the order of withdrawal in the divorce action "was entered either September 6th or September 7th, and this lawsuit was filed September 11th." Therefore, the court held that it was unnecessary to decide whether defendants were properly served and granted defendants' motion for summary disposition.[4]

## II. ANALYSIS

### A. PLAINTIFF'S LEGAL MALPRACTICE CLAIM

A legal malpractice action must be filed within two years of the date that the claim accrues. MCL 600.5805(8); *Wright v Rinaldo*, 279 Mich App 526, 528; 761 NW2d 114 (2008). The claim accrues on the date that the attorney discontinues serving the client in the matter from which the claim arose. MCL 600.5838(1); *Wright*, 279 Mich App at 528.

Before the trial court, plaintiff asserted that her malpractice claim accrued no earlier than the date the order of withdrawal was signed by the judge, which, according to plaintiff, occurred no earlier than September 7, 2016. On appeal, plaintiff contends that the order was signed on September 8, 2016. Defendants assert that the order of withdrawal "states unmistakably that it was signed on September 6, 2016." Regardless of whether defendants' legal representation of

---

[4] A trial court's decision on a motion for summary disposition is reviewed de novo. *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 434-435; 738 NW2d 664 (2007). In reviewing a trial court's decision on a motion under MCR 2.116(C)(7) (statute of limitations), we consider the documentary evidence submitted by the parties and accepts the contents of the complaint as true unless specifically contradicted. *Carmichael v Henry Ford Hosp*, 276 Mich App 622, 624; 742 NW2d 387 (2007). We also review de novo the interpretation of court rules. *Vyletel-Rivard v Rivard*, 286 Mich App 13, 20; 777 NW2d 722, 725 (2009). The rules of statutory construction apply to the interpretation of court rules; when the language of a rule is clear, "this Court must enforce the meaning expressed without further interpretation or construction." *In re BAD*, 264 Mich App 66, 74; 690 NW2d 287, 292 (2004).

plaintiff ended on September 6, 7 or 8 of 2016, we conclude that plaintiff's claim is untimely because it was filed on September 11, 2018.[5]

The clerk of court was authorized to reject plaintiff's complaint submitted on September 7, 2018, for failure to comply with the requirements set forth in with MCR 1.109(D). See MCR 8.119(C) ("The clerk of the court may only reject documents that do not comply with MCR 1.109(D)(1) and (2) . . . ."). That complaint was rejected on September 10, 2018. Plaintiff then successfully filed a complaint on September 11, 2018. Plaintiff argues that September 7, 2018, should be considered the operative filing date for determining compliance with the statute of limitations. She relies solely on MCR 1.109(G)(5)(b), which provides in relevant part:

> A document submitted electronically is deemed filed with the court when the transmission to the electronic-filing system is completed and the required filing fees have been paid or waived. If a document is submitted with a request to waive the filing fees, no fees will be charged at the time of filing and the document is deemed filed on the date the document was submitted to the court. A transmission is completed when the transaction is recorded as prescribed in subrule (c). *Regardless of the date a filing is accepted by the clerk of the court, the date of filing is the date submitted.* [Emphasis added.]

Plaintiff argues that the emphasized language means that September 7, 2018, the date her rejected complaint was filed, should be considered the filing date rather than September 11, 2018, the date when her defect-free complaint was filed and accepted by the clerk. Plaintiff reads too much into MCR 1.109(G)(5)(b). The sentence providing that the date of submission is the filing date refers to a filing that was "accepted by the clerk." In other words, if a filing is *accepted*, the filing date is the date of submission. This clause does not support plaintiff's proffered interpretation, which is essentially that an accepted filing should relate back to the date that a prior, rejected document was filed. See *In re McCarrick/Lamoreaux*, 307 Mich App 436, 446; 861 NW2d 303 (2014) ("When interpreting a court rule, we must read the rule's provisions reasonably and in context."). Plaintiff overlooks that the rejected and accepted complaints were distinct filings with separate filing dates. The rejected complaint was filed on September 7, 2018, and because it was rejected it did not become part of the court record. See MCR 1.109(G)(5)(iii) ("A rejected

---

[5] Plaintiff also argues that that defendants continued to provide legal services in this matter following their withdrawal. In her amended complaint plaintiff alleged that defendants "continued to handle the divorce matter and bill [her] for services throughout the entire time the case had been open and afterward." In support of this assertion, plaintiff attached a statement from defendants showing billings on April 20, 2017, and May 12, 2017. Defendants denied that they provided services after they had been relieved of their obligation to do so, and attached invoices showing that the subsequent billings comprised fees and costs for services ending on September 2, 2016, as well as interest. In sum, the only evidence relating to activity by defendants after entry of the withdrawal order are the billing statement and invoices, which contrary to plaintiff's claim, do not show that defendants provided further service to plaintiff after the withdrawal was entered. Accordingly, we need not accept as true plaintiff's unsupported assertions regarding legal services rendered by defendants post-withdrawal. See *Carmichael p*, 276 Mich App at 624.

document shall not become part of the official court record . . . ."). The subsequent complaint that was filed and accepted on September 11, 2018, is the operative action for determining whether plaintiff complied with the two-year limitations period. Because September 11, 2018, is outside of that period regardless of when the withdrawal order became effective, we affirm dismissal of plaintiff's legal malpractice claim as untimely.

## B. BREACH OF CONTRACT AND TORT CLAIMS

Plaintiff also argues that the trial court erred by applying the two-year limitations period for malpractice actions to her breach of contract and tort claims.

The proper limitations period for a claim is determined by the true nature of that claim. *Adams v Adams*, 276 Mich App 704, 710; 742 NW2d 399 (2007). The focal point of the inquiry is the type of injury allegedly harmed, and "the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Id.* at 710-711.

The elements of a legal malpractice claim are (1) the existence of an attorney-client relationship; (2) negligence in the representation of the plaintiff; (3) injury proximately caused by that negligence; and (4) the extent of the injury alleged. *Bowden v Gannaway*, 310 Mich App 499, 503; 871 NW2d 893(2015). Where a plaintiff alleges multiple causes of action arising from an attorney-client relationship, a court must examine the type of interest allegedly harmed. "[C]laims against attorneys brought on the basis of inadequate representation sound in tort and are governed by the malpractice statute of limitations, even though a plaintiff may assert that the attorney's actions breached a contract." *Aldred v O'Hara-Bruce*, 184 Mich App 488, 490; 458 NW2d 671 (1990). However, where a claim involves harm to an interest which differs from a breach of the standard of care, that claim is not subsumed by a malpractice claim. *Brownell v Garber*, 199 Mich App 519, 532; 503 NW2d 81 (1993).

In *Brownell*, the plaintiff retained the defendant to represent him in a divorce action. The plaintiff later filed suit against the defendant, alleging malpractice, breach of contract, and fraud. The trial court ruled that the plaintiff's allegations sounded in malpractice and granted summary disposition on the ground that the limitations period had run. On appeal, this Court noted that "[a]uthority does exist for holding an attorney liable under a contract theory." *Id.* at 525. However, after examining the allegations closely, this Court held that there was "no agreement by defendant that his services would be above the level required by the standard of care." *Id.* Thus, the trial court did not err by finding that the breach-of-contract claim was duplicative of the malpractice claim. *Id.* at 526. However, the majority found that the trial court erred in dismissing the plaintiff's fraud claim, holding that "the interest involved in a claim for damages arising out of a fraudulent misrepresentation differs from the interest involved in a case alleging that a professional breached the standard of care. Simply put, fraud is distinct from malpractice." *Id.* at 532.

*Brownell* supports the proposition that if plaintiff can show a breach of contract separate from the contract to provide competent legal representation, she may maintain a breach-of-contract action. Similarly, in *Barnard v Dilley*, 134 Mich App 375, 378; 350 NW2d 887 (1984), this Court recognized that a plaintiff may maintain a breach-of-contract action stemming from an attorney-

client relationship where the plaintiff alleges a breach of a "special agreement" to perform a specific act.

This Court has also recognized that a claim for breach of fiduciary duty arising from an attorney-client relationship may exist independently from a malpractice claim. In *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 47; 698 NW2d 900 (2005), this Court explained that "[t]he conduct required to constitute a breach of fiduciary duty requires a more culpable state of mind than the negligence required for malpractice."

In this case, plaintiff's breach-of-contract claim rests, in part, on her allegation that she retained defendants, in part, to "bring a motion or other appropriate action to dismiss the divorce action from Barry County." This allegation is supported by the engagement agreement submitted as an exhibit to her response to the motion for summary disposition, which recognizes that plaintiff requested that defendants represent her "with respect to a divorce/Motion to Dismiss matter." (Bolding removed). Plaintiff further alleged that "after promising to seek a change of venue, Defendants willfully failed to do so at any point during the divorce case yet misrepresented to Plaintiff [that] they sought or were in the process of seeking a change of venue."

These allegations have not been specifically contradicted by defendants and must be accepted as true for purposes of a motion under MCR 2.116(C)(7). *Carmichael v Henry Ford Hosp*, 276 Mich App 622, 624; 742 NW2d 387 (2007). Viewed in a light most favorable to plaintiff, these allegations would establish a "special agreement," distinct from the duty to represent plaintiff competently, and a breach of that agreement distinct from plaintiff's malpractice claim. Thus, the six-year limitations period for breach-of-contract actions applies and the trial court erred by dismissing this claim.

Plaintiff alleged other instances of negligent or intentional conduct that are not distinct from defendants' duty to provide competent representation, but she also alleged intentional conduct that may be sufficient to establish causes of action distinct from her malpractice claim: intentional infliction of emotional distress, fraudulent misrepresentation, breach of fiduciary duty, and civil conspiracy. The trial court never examined these allegations. "[T]his Court's review is generally limited to matters actually decided by the lower court." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018). When the trial court's decision is based on an erroneous application of legal principles, this Court may remand for the issues "to be addressed in the first instance by the trial court under the proper legal framework." *Id.* Accordingly, we remand this case to the trial court for it to address these allegations and determine the extent to which any of them establish a cause of action distinct from plaintiff's malpractice claim, and as such would not be subject to the two-year limitations period.

## C. SERVICE OF PROCESS

Defendants alternatively sought summary disposition on the ground that plaintiff failed to serve them before expiration of the summons. The trial court did not decide that issue because it dismissed plaintiff's complaint solely on the ground that plaintiff's complaint was time-barred. Although we affirm the trial court's dismissal of plaintiff's claim for legal malpractice, because we reverse the dismissal of plaintiff's breach of contract and tort claims and remand for further proceedings with respect to those claims, we direct the trial court to also address as necessary

defendants' assertion that plaintiff's claims should be dismissed for failure to serve defendants before expiration of the summons.

"On the filing of a complaint, the court clerk shall issue a summons to be served as provided in MCR 2.103 and 2.105." MCR 2.102(A). A summons expires 91 days after it is issued, unless extended by the court. MCR 2.102(D). An action is deemed dismissed as to a defendant who has not been served prior to the expiration of the summons. MCR 2.102(E)(1).

In this case, defendants are an individual and a professional corporation. Process is served on an individual by "delivering a summons and a copy of the complaint to the defendant personally," MCR 2.105(A)(1), or "sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee." MCR 2.105(A)(2). Service by mail is complete made when the defendant acknowledges receipt of the mail, and "a copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2)." *Id.*

Process may be served on an existing corporation by "serving a summons and a copy of the complaint on an officer or the resident agent," MCR 2.105(D)(1), or by serving a director, trustee, or person in charge of an office and sending the summons and a copy of the complaint, addressed to the principal office of the corporation, by registered mail. MCR 2.105(D)(2). The term "registered mail" includes "certified mail." MCR 2.105(K)(1).

Plaintiff's brief asserts that she served both defendants by service on their resident agent. Toth, as an individual, does not have a resident agent and even presuming the corporation was served through their resident agent that does not constitute service on Toth. The sole evidence of an attempt to serve by mail is the U.S. Postal Service's receipt attached to the proofs of service indicating that a single mailing was sent via priority express mail, addressed to Robert E. Borsos, at Kreis Enderle Hudgins & Borsos, PC, in Portage, Michigan. However, it does not indicate that the item was sent by either registered or certified mail. In addition, the proof of service does not include a return receipt signed by addressee Boros, but merely a U.S. Postal Service tracking history printout indicating that an item was delivered on November 30, 2018, at 2:06 p.m. and "was signed for by M. DAWSTER." Plaintiff has not alleged that Dawster is a director, trustee, or person in charge of the law firm's office as required by MCR 2.105(D)(2).

In *Bullington v Corbell*, 293 Mich App 549; 809 NW2d 657 (2011), this Court vacated a default judgment entered against an individual and two corporations who failed to answer a complaint after the trial court granted a motion for alternate service. In the motion for alternate service, the plaintiff stated that he had served a summons and complaint against all three defendants at the same address by certified mail, return receipt requested, but that the defendants refused service and the mail was returned. *Id.* at 553. Although the record contained no proof that the alternate service was completed, a default judgment was entered against the defendants, who then filed a motion to set aside the default judgment, "asserting that they had not received actual or constructive notice of the lawsuit." *Id.* at 555. This Court explained that because the certified mail envelope holding the summons and complaint did not restrict delivery to the individual defendant, the attempted service on him violated MCR 2.105(A)(2). *Id.* at 557. Addressing the attempted service on the corporate defendants, this Court explained:

With regard to private corporations, the court rules require personal service on an officer, registered agent, director, trustee, or person in charge of an office or business establishment. MCR 2.105(D)(1) and (2). If service is made by serving a summons and copy of the complaint on a director, trustee, or person in charge of an office or business establishment, the plaintiff must also send a summons and complaint "by registered mail, addressed to the principal office of the corporation." MCR 2.105(D)(2). A plaintiff may employ registered mail to serve process when a corporation "has failed to appoint and maintain a registered agent . . . . MCR 2.105(D)(4)(a). Nothing in the record supports that Hunter Homes failed to appoint or maintain a registered agent. [*Bullington*, 293 Mich App at 557-558.]

In this case, as in *Bullington,* there is no record evidence that plaintiff attempted to restrict delivery to defendant Toth. Likewise, there is no record evidence that plaintiff served a director, trustee, or person in charge of an office and mailed the summons and complaint by registered mail, addressed to the principal office of the firm. Thus, based on the record in this case, plaintiff's service on defendants does not comply with MCR 2.105.

However, a finding that plaintiff's service on defendants violated MCR 2.105 does not end the inquiry. Defendants assert that plaintiff's violations of MCR 2.105 require dismissal of plaintiff's action in its entirety, but "[a]n action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided in these rules for service." MCR 2.105(J)(3). In *Mich Ed Ass'n v N Dearborn Hts Sch Dist*, 169 Mich App 39; 425 NW2d 503 (1988), this Court explained that "where notice of a pending suit is actually received within the requisite time frame, it matters not whether service of process was made in accordance with the prescribed rules." *Id.* at 45, citing *Hill v Frawley*, 155 Mich App 611, 613; 400 NW2d 328 (1986); *Bunner v Blow-Rite Insulation Co, Inc*, 162 Mich App 669; 413 NW2d 474 (1987).

In this case, counsel filed appearances on behalf of both defendants on December 19, 2018, eight days after expiration of the summons. The next day, defendants filed a motion for summary disposition under MCR 2.116(C)(7). Thus, defendants clearly received notice of the action against them at some point before December 19, 2018. If notice was received before December 11, 2018, plaintiff's violation of MCR 2.105 is moot. *Mich Ed Ass'n*, 169 Mich App at 45.

Plaintiff asserts that defendant Toth actually received notice of the action, but offers no evidence in support of that assertion. Moreover, in an affidavit attached to defendants' motion for summary disposition, defendant Toth stated that he had never been served with a summons or complaint, had never received a summons addressed to him, and had never signed a return receipt for a summons. If this is true, MCR 2.105(J)(3) does not apply and plaintiff's claims against him are ripe for dismissal.

Regarding service on defendant law firm, the envelope was delivered to an office of the firm on November 26, 2018. Thus, the firm likely received notice before December 11, 2018. However, this is merely a presumption, and this Court's consideration of the issue is limited because the trial court did not address it. The record contains no identification of M. Dawster, who signed for the delivery, and no description of what M. Dawster did upon receiving the

envelope. Further consideration by the trial court on remand is necessary to determine when defendants received actual notice of the action pending against them.

## III. CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro